1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ABE WILLIAMS,

11              Petitioner,              No. CIV S-03-0919 LKK GGH P

12         vs.

13   M.L. KNOWLES, et al.,

14              Respondents.          FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17              Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  In 1987 petitioner was convicted of second degree murder

19   and sentenced to fifteen years to life with three one year consecutive sentences.

20              This action is proceeding on the third amended petition filed May 9, 2005, which

21   challenges the 1999 decision by the California Board of Prison Terms (BPT) finding petitioner

22   unsuitable for parole.  The third amended petition raises the following three claims: 1) violation

23   of Cal. Penal Code § 190; 2) violation of Cal. Penal Code § 3041; and 3) imposition of an illegal

24   no-parole policy.

25              On May 9, 2005, petitioner also filed a motion to file a separate habeas petition in

26   this action raising the grounds raised in case no. S107538 filed in the California Supreme Court,

1

which also appeared to challenge the 1999 suitability hearing.  On November 7, 2005, the court

granted this request.  On December 30, 2005, petitioner filed a supplemental petition.  On

January 31, 2006, respondent filed a motion to dismiss the supplemental petition on grounds that

the claims raised in it are barred by the statute of limitations, not exhausted and procedurally

barred.

After carefully reviewing the record, the court recommends that the claims raised

in the third amended petition be denied.  The court also recommends that respondent's motion to

dismiss the supplemental petition be denied, but that the claims raised in the supplemental

petition be denied on the merits.

II.  <u>Third Amended Petition</u>

A.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neeley v. Nagle</u>,

138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997).  The AEDPA "worked

substantial changes to the law of habeas corpus," establishing more deferential standards of

review to be used by a federal habeas court in assessing a state court's adjudication of a criminal

defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir.

1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

between "contrary to" clearly established law as enunciated by the Supreme Court, and an

"unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies

to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

Court on a point of law, or (2) if the state court case is materially indistinguishable from a

Supreme Court case, i.e., on point factually, yet the legal result is opposite.

1    "Unreasonable application" of established law, on the other hand, applies to

2 mixed questions of law and fact, that is, the application of law to fact where there are no factually

3 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

4 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

5 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

6 deference is not blindly automatic, "the most important point is that an *unreasonable* application

7 of federal law is different from an incorrect application of law....[A] federal habeas court may not

8 issue the writ simply because that court concludes in its independent judgment that the relevant

9 state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

10 that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

11 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

12 objectively unreasonable nature of the state court decision in light of controlling Supreme Court

13 authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

14    The state courts need not have cited to federal authority, or even have indicated

15 awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

16 Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

17 contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

18 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

19 occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

20 established Supreme Court authority reviewed must be a pronouncement on constitutional

21 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

22 binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

23    However, where the state courts have not addressed the constitutional issue in

24 dispute in any reasoned opinion, the federal court will independently review the record in

25 adjudication of that issue.  "Independent review of the record is not de novo review of the

26 constitutional issue, but rather, the only method by which we can determine whether a silent state

3

1   court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

2   2003).

3          On July 24, 2001, the Superior Court of Monterey County issued a reasoned

4   opinion addressing the merits of petitioner's claims. Respondent's Exhibit 2. The California

5   Court of Appeal and California Supreme Court denied petitioner's habeas petitions raising these

6   claims without comment or citation. Respondent's Exhibits 3, 4. Accordingly, the court

7   considers whether the denial of these claims by the Monterey Superior Court was an

8   unreasonable application of clearly established Supreme Court authority. Shackleford v.

9   Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (in reviewing a state court's summary denial

10  of a habeas petition, this court must "look through" the summary disposition to the last reasoned

11  decision).

12         B. Analysis

13             Violation of Cal. Penal Code § 190

14         In claim one, petitioner alleges that the BPT improperly denied him credits to

15  which he was entitled pursuant to Cal. Penal Code § 190. In 1978, California Penal Code § 190

16  was amended, in relevant part, to provide that inmates sentenced to 15 years to life for second

17  degree murder were eligible to earn conduct credits toward their sentences. In re Oluwa, 207

18  Cal. App.3d 439, 442, 255 Cal. Rptr. 35 (1989). In the third amended petition, petitioner argued

19  that had the BPT properly awarded these credits, he should have been released no later than his

20  "maximum eligible parole date" of April 18, 2001. Third Amended Petition, p. 3. By maximum

21  eligible parole date, petitioner is apparently referring to his three year determinate sentence

22  combined with the fifteen year sentence (minus the life term) for his murder conviction without

23  application of any credit reduction.

24         In his traverse, petitioner expands on this claim:

25         Therefore, petitioner contends he has liberty interest credits and parole, derived
           from the following statutes: PC §§ 190, 2931, 2932(e) and most particularly 3000.
26         These statutes, jointly and separately, limit the paroling discretion of the Board as

                                              4

1    it pertains to PC § 190 prisoners and their initial parole release dates.  As noted,
     these code sections limits the Board to paroling § 190 prisoners between their
2    MEPD and their Max-MEPD at the expiration of their minimum terms.  Once the
     Board fails to release by the expiration of the minimum-term, the Board loses
3    jurisdiction over releasing on the "initial" parole and only the courts or CDC has
     the authority to release the prisoner.  However, the Board does not lose
4    jurisdiction over the § 190 prisoner, and once the prisoner is released by the courts
     or CDC, the Board maintains all its powers pursuant to PC § 3040 et seq.

5

6    Traverse, p. 16: 1-14.

7           Respondent first argues that this claim should be denied because petitioner has no

8    liberty interest in parole.  This argument, as applied to California prisoners, is foreclosed by

9    McQuillion v. Duncan, 306 F.3d 895, (9th Cir. 2002) and Biggs v. Terhune, 334 F.3d 910 (9th Cir.

10   2003).

11          Respondent next argues that petitioner's claim alleging a violation of § 190

12   alleges a violation of state law only.  The court finds that petitioner is challenging the

13   interpretation and application of state law as it applies to his sentence.  By finding that the state

14   courts have ruled on petitioner's claims concerning the interpretation and application of state

15   sentencing law, it necessarily follows that the alleged improper application of state law is not

16   subject to review by federal court.  Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 2102 (1990).

17          Petitioner is, in essence, urging a new interpretation of state law.[1]  This court must

18   defer to a state court's interpretation of its own laws unless that interpretation is untenable or

19   amounts to a subterfuge to avoid federal review of a constitutional violation.  Oxborrow v.

20   Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).  While petitioner urges his own interpretation of

21   state law, this court finds that the interpretation of the at-issue state law by the California courts

22   is neither untenable nor a subterfuge to avoid federal review.  Accordingly, this claim should be

23   denied on this ground.

24   _____

25        [1]  As discussed, infra, petitioner's supplemental petition raises the same claim but
     includes briefing expanding on petitioner's legal theory regarding why the interpretation of § 190
26   by the state courts is incorrect.

1    The court makes the following observations about petitioner's claim.  First,

2 petitioner was sentenced to fifteen years to life.  His maximum term is life in prison and he has

3 not been kept in beyond the end of that term.  Petitioner has apparently confused the minimum

4 term necessary to be served before parole could be implemented at its earliest, the minimum

5 eligible parole date (MEPD) with a determinate sentence of fifteen years.  Indeed, the BPT is not

6 required to find petitioner even eligible for a parole setting within fifteen years.  Petitioner could

7 spend the rest of his life in prison without ever becoming eligible for parole.

8    Second, the court notes that under California law, petitioner is no longer entitled

9 to earn credits toward his release date.  In In re Dayan, 231 Cal. App. 3d 184, 282 Cal. Rptr. 269

10 (1991), the petitioner, serving a sentence of fifteen years to life for second degree murder, alleged

11 that he was entitled to application of good behavior credits toward his statutory minimum term of

12 fifteen years and toward his actual term set by the Board of Prison Terms (BPT).  The California

13 Court of Appeal found that Cal. Penal Code § 190(a) mandates application of good behavior

14 credits by the CDC against the minimum term for second degree murder (fifteen years) imposed

15 by statute for purposes of establishing the MEPD.  Id. at 188, 282 Cal. Rptr. at 271.  However,

16 nothing in the statute requires the BPT to reapply the same credits to the actual term it sets.  Id.,

17 282 Cal. Rptr. at 271.  Thus, theoretically, if a prisoner were determined to be parole eligible at

18 the earliest possible time, credits might be of some use in actually reducing the absolute

19 minimum time to be served before release on parole.  See People v. Rowland, 134 Cal. App.3d 1,

20 13-14, 184 Cal. Rptr. 346, 352 (1982).  However, if a prisoner's incarceration time passes his

21 MEPD, and he has yet to be found *eligible for parole,* computation of time credits is meaningless

22 – he will be released if and when found eligible, and then only after a computation of a release

23 date under BPT matrices.

24    In the instant case, petitioner has already passed his MEPD without any finding of

25 parole eligibility.  Amended Petition, Exhibit G; Respondent's Exhibit 1, p. 1.  Pursuant to

26 Dayan, petitioner is no longer entitled to any credit reduction.  To the extent petitioner is

1   claiming that the BPT (or CDC) has failed to award him credits, this claim is without merit.

2         The denial of this claim by the Monterey Superior Court was not an unreasonable

3   application of clearly established Supreme Court authority.  Accordingly, this claim should be

4   denied.

5                    *Violation of Cal. Penal Code § 3041*

6         Petitioner argues that Cal. Penal Code § 3041 requires the BPT to give him a

7   parole date.  Section 3041 provides that one year prior to the inmate's minimum eligible parole

8   release date a panel consisting of at least two commissioners of the BPT shall meet with the

9   inmate and *shall normally* set a parole release date.  Petitioner appears to argue that because §

10  3041 provides that the BPT shall normally set parole release dates, the BPT violated due process

11  by failing to set his parole release date.

12        California's parole scheme gives rise to a cognizable liberty interest in release on

13  parole.  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003).  "In the parole context, the

14  requirements of due process are met if 'some evidence' supports the decision."  Id.  If there is not

15  some evidence to support a decision denying parole, due process is violated.  Therefore, even

16  though California law states that the BPT shall normally set parole release dates, due process

17  does not require the BPT to state a date where some evidence exists demonstrating that petitioner

18  should not be paroled.  As will be discussed infra, some evidence existed to support the 1999

19  decision finding petitioner unsuitable for parole.  Accordingly, petitioner's claim that the BPT

20  was required to set his parole release date pursuant to Cal. Penal Code § 3041 is without merit.

21        Because the denial of this claim by the Monterey Superior Court was not an

22  unreasonable application of clearly established Supreme Court authority, this claim should be

23  denied.

24                    *No-Parole Policy*

25        Petitioner argues that he has been denied parole pursuant to a no-parole policy.  In

26  support of this claim, petitioner cites Coleman v. Board of Prison Terms, CIV S-96-0783 LKK

PAN P.  In Coleman, the Honorable Lawrence K. Karlton found that under Governors Wilson and Davis, the BPT disregarded regulations ensuring fair suitability hearings and instead operated under a sub rosa policy that all murderers be found unsuitable for parole.  See December 22, 2004, findings and recommendations, adopted by the district court on December 2, 2005.

Petitioner's assertion of a "no parole" policy in 1999 raises profoundly complex issues in light of the Findings and Recommendations/Order of Adoption/Judgment in Coleman v. Board of Prison Terms, CIV-S-96-0783 LKK PAN P, appeal pending.  In Coleman, the court found that a no parole policy was in effect for California "lifers" in 1999 which infected Coleman's BPT proceeding in 1999.  Coleman rejected the BPT's "so what" assertion that the presence of some evidence would ameliorate the policy because Coleman properly found a biased decision maker to be structural error not susceptible to a harmless error standard.  The remedy in Coleman required that petitioner be given a new hearing before an unbiased panel of BPT commissioners.

Complex issues abound insofar as Coleman is urged by petitioner as applicable to his 1999 BPT hearing.  Some of those issues are as follows: (1) was the holding in Coleman applicable to *all* BPT panels or just the panel at issue in Coleman; (2) how does one reconcile state court holdings contrary to Coleman ,which are also entitled to res judicata/collateral estoppel effect in federal court; (3) did petitioner waive his objection to a no parole policy occasioned by biased BPT panel members when he expressly "temporarily" waived his bias objection when proceeding before the panel; (4) what is the effect of Coleman in this case where the BPT commissioners *expressly* disavowed that any "no parole" policy would motivate their decision.  There may be other issues upon further reflection.  However, in this case the complexity of the trees (issues) admit to a rather easy decision in respect to the forest – which has the effect of mooting the "no parole" policy issue.  The solution hinges upon the appropriate remedy even if the petition were to be granted in this case on the "no parole" policy.

\\\\\

1      In <u>Coleman</u>, the appropriate remedy given was an order that Coleman receive a

2  hearing before unbiased commissioners.  As Judge Karlton noted in a follow-up order in

3  <u>Coleman</u> when denying petitioner's request for immediate release, the fact that Coleman had a

4  hearing in 2005 more or less obviated the structural error found for the 1999 hearing.  That is,

5  Judge Karlton found that no evidence had been presented to suggest that the 2005 BPT panel was

6  affected by a no parole policy.  In late 2004, a new Governor had been elected in the latter part of

7  2004 for whom the record was silent with respect to an enunciated "no parole" policy.  Petitioner

8  had received, in effect, the remedy ordered by the initial decision – a hearing from a panel

9  unaffected by the found "no parole" policy – or at least there was no evidence to suggest that the

10 2005 panel was biased.

11     In this case, as far as the record demonstrates, petitioner had parole eligibility

12 hearings in 2002, 2003, and 2004.  It is highly likely that petitioner has had another eligibility

13 hearing by 2006, or he will very shortly have one.  There is no indication that any 2006 panel

14 would be affected by a historical "no parole" policy assertedly instituted by two previous

15 governors.  Thus, the only remedy to be ordered here based on a "no parole" policy in 1999 is for

16 petitioner to have another parole eligibility hearing in 2006 or 2007 (whenever this case reached

17 finality).  In all likelihood, the regularly recurring BPT hearing would take place (if it has not

18 taken place already) prior to the time this case reached any finality.  The "no parole" policy issue

19 would certainly be moot by that time, if it is not moot already.

20     Petitioner does not desire another hearing; he wants the court to simply order a

21 parole date on account of the "no parole" policy.  Petitioner discounts the ability of the BPT, or

22 presumably the court as well, to ever find that "some evidence" to warrant eligibility denial is not

23 present.  Petitioner specifically states: "Of course, there was some evidence to support the denial;

24 and, there will always be some evidence under California law."  Traverse at 31.  However, the

25 undersigned disagrees.  One cannot both embrace the liberty interest created by the California

26 parole eligibility statute, the cornerstone of which is "some evidence" must exist if parole

1   eligibility is denied, see Biggs, supra, and also disclaim that cornerstone as having any

2   applicability.  Federal law recognizes the liberty interest created by state law, and it is *federal* law

3   which defines the process which is due.  That process includes a provision that parole eligibility

4   may be denied if there exists "some evidence" of the factors categorized as making one

5   unsuitable for parole.

6          Moreover, in practice petitioner's point is not well taken.  The undersigned, Judge

7   Karlton, and other courts have found a lack of "some evidence" in several cases.  See e.g., Irons

8   v. Warden etc., 358 F. Supp. 2d 936 (E.D. Cal. 2005).  In that case, the undersigned found that

9   continuing and undue reliance on unchanging factors, such as the seriousness of the crime, could

10  not constitute "some evidence."  Because in that case, no other evidence could warrant a denial

11  of parole, the court ordered the computation of a parole date.  Petitioner has the same opportunity

12  for a "some evidence" review here as did petitioner Irons.  That review commences in the

13  following section.

14          *Some Evidence*

15          For the following reasons, the court finds that petitioner has not demonstrated that

16  he was denied parole eligibility pursuant to the no-parole policy because sufficient evidence

17  supported the BPT's decision.

18          The court will first set forth the relevant law and regulations regarding suitability

19  hearings.

20          Cal. Code of Regulations, section 2402(c), sets forth the circumstances tending to

21  show unsuitability.  The court lists those of significance here:

22          (1) Commitment Offense.  The prisoner committed the offense in
            an especially heinous, atrocious or cruel manner.  The factors to be
23          considered include:
            (A) Multiple victims were attacked, injured or killed in the same or separate
24          incidents.

25          (B) The offense was carried out in a dispassionate and calculated
            manner, such as an execution-style manner.

26

*****

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

*****

*****

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Section 2402(d) sets forth the circumstances tending to indicate suitability:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made

realistic plans for release or has developed marketable skills that
can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an
enhanced ability to function within the law upon release.

As discussed above, California's parole scheme gives rise to a cognizable liberty interest in release on parole.  Biggs v. Terhune, 334 F.3d at 914.  Only one aspect of that liberty interest is of pertinence here:  "In the parole context, the requirements of due process are met if 'some evidence' supports the decision."  Id.  The evidence underlying the board's decision must have some indicia of reliability.  Id.

In Biggs, the Ninth Circuit indicated that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation.  Biggs was serving a sentence of twenty-five years to life following a 1985 first degree murder conviction. In the case before the Ninth Circuit, Biggs challenged the 1999 decision by the BPT finding him unsuitable for parole despite his record as a model prisoner.  334 F.3d at 913.  While the Ninth Circuit rejected several of the reasons given by the BPT for finding Biggs unsuitable, it upheld three:  1) petitioner's commitment offense involved the murder of a witness; 2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; 3) petitioner could benefit from therapy.  334 F.3d at 913.

The Ninth Circuit cautioned the BPT regarding its continued reliance on the gravity of the offense and petitioner's conduct prior to the offense:

As in the present instance, the parole board's sole supportable
reliance on the gravity of the offense and conduct prior to
imprisonment to justify denial of parole can be initially justified as
fulfilling the requirements set forth by state law.  Over time,
however, should Biggs continue to demonstrate exemplary
behavior and evidence of rehabilitation, denying him a parole date
simply because of the nature of his offense would raise serious
questions involving his liberty interest.

334 F.3d at 916.

\\\\\

12

1    The Ninth Circuit stated that "[a] continued reliance in the future on an

2 unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

3 contrary to the rehabilitative goals espoused by the prison system and could result in a due

4 process violation." 334 F.3d at 917.

5    Petitioner's 1999 hearing was a subsequent suitability hearing. Although the

6 court cannot determine precisely how many prior suitability hearings petitioner had, because his

7 MEPD date was December 28, 1996, this was clearly either his second or third suitability

8 hearing. Respondent's Answer, Exhibit 1, part 2, p. 1.

9    The BPT first found that the offense was carried out in a dispassionate manner

10 and demonstrated a callous disregard for human suffering. Section 2402(c)(1)(B) & (D). In

11 support of this finding, the BPT relied on the circumstances of the offense:

12        On May '84 between the hours of 6 a.m. and 11 p.m., Williams was at 922 E
          Street, (inaudible) with the victim, age three, and the victim's mother, Deborah
13        Harris. Williams tied the victim's hands to one door and her feet to another and
          beat her until she lost consciousness. The child was taken to Merritt, M-E-R-R-I-
14        T-T, Hospital emergency room with Deborah Harris and was pronounced dead
          upon arrival. The cause of death was blunt trauma to the head.

15

16 Respondent's Answer, Exhibit 1, part 1, p. 15.

17    Based on the description of the offense, the court finds that the BPT's

18 characterization of it as having been carried out in a dispassionate manner and demonstrating a

19 callous disregard for human suffering was supported by some evidence. Because this was either

20 petitioner's second or third suitability hearing, the BPT's reliance on this unchanging factor did

21 not violate due process. Biggs, supra.

22    The panel next found petitioner unsuitable based on his criminal history.

23 Petitioner had been to prison at least twice before and had violated parole three times.

24 Respondent's Answer, Exhibit 1, part 1, p. 16. Petitioner's convictions were for forgery,

25 burglary, receiving stolen property and passing bad checks. Id., Exhibit 1, part 2, p. 36. This

26 criminal record did not demonstrate a previous record of violence or a history of violence. See §

1   2402(c)(2) (previous record of violence tends to show unsuitability); § 2402(d)(6) (lack of

2   significant history of violent crime tends to show suitability).  However, a lengthy criminal

3   history of non-violent crimes fits into other categories such as stability of social relationships and

4   may constitute evidence, if not too remote, indicating the inappropriateness of release.

5   Nevertheless, the history at issue here predates the current decision by many years.  It should not

6   constitute "some evidence" warranting denial of parole eligibility.

7        The BPT found petitioner unsuitable because he had a history of drug use and had

8   not sufficiently participated in self-help therapy.  Id., Exhibit 1, part 2, p. 3.  See § 2402(d)

9   (institutional activities indicate an enhanced ability to function within the law upon release).  At

10   the hearing, petitioner admitted that he had been using more than $100 a day worth of heroin.

11   Id., Exhibit 1, part 1, p. 18.  Petitioner had attended AA since 1993.  Id., p. 19.  Petitioner's

12   psychological report dated July 1, 1999, diagnosed petitioner as having "opiate dependence,

13   alcohol dependence, and cocaine abuse in sustained and full remission."  Id., p. 24.  The report

14   also stated that petitioner's polysubstance abuse represented a possible risk factor which could be

15   a precursor to violence by petitioner upon release, and recommended that petitioner continue

16   participation in AA and NA upon release.  Id.

17        The court record does not include the psychology report.  Without reviewing this

18   document, the court cannot determine whether the BPT's finding that petitioner had not

19   participated in sufficient therapy was supported by some evidence.

20        For the reasons discussed above, the court finds that some evidence supported the

21   BPT's decision finding petitioner unsuitable for parole.

22        The denial of this claim by the Superior Court was not an unreasonable

23   application of clearly established Supreme Court authority.  Accordingly, this claim should be

24   denied.

25   \\\\\

26   \\\\\

III.  Supplemental Petition

The supplemental petition filed December 30, 2005, raises two claims.  First, petitioner argues that he should have been released on parole on April 18, 2001, had the BPT properly applied his time credits pursuant to Cal. Penal Code § 190.  The court is unable to distinguish this claim from the claim raised in the third amended petition regarding credits pursuant to § 190, particularly as clarified in the traverse.  In claim two of the supplemental petition, petitioner argues that he was entitled to be released on April 18, 2001, based on heightened expectations created by state officials over many years.

Respondent argues that the supplemental petition should be dismissed because the claims are barred by the statute of limitations, procedurally defaulted and not exhausted.  To the extent petitioner is raising the same claim regarding § 190 in the supplemental petition as he raised in the third amended petition, which as far as the court can tell is the case, this claim is not barred for the reasons argued by respondent.  If the claim is properly raised in the third amended petition, which respondent apparently concedes, it cannot now be barred because it is not properly raised in the supplemental petition.

The court first considers whether the supplemental petition is barred by the statute of limitations.  The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

Because petitioner is challenging an administrative decision, the limitations period
began to run on the date the BPT denied his administrative appeal.  Shelby v. Bartlett, 391 F.3d
1061, 1065 (9th Cir. 2003).  On April 11, 2000, the BPT denied his administrative appeal.
Supplemental Petition, Exhibit O.  Accordingly, petitioner had until April 12, 2001, to file a
timely federal petition.

Respondent argues that petitioner did not file his first state petition raising the
claims contained in the supplemental petition until March 27, 2002, which was well after the
statute of limitations period had expired.  Supplemental Petition, Exhibit N.  Therefore,
respondent argues, the claims raised in the supplemental petition are barred by the statute of
limitations.

An analysis of whether the claims raised in the supplemental petition are barred
by the statute of limitations requires a discussion of issues not raised by respondent.  Respondent
does not address whether the claims in the supplemental petition relate back to the claims raised
in the third amended petition.  See Mayle v. Felix, 125 S. Ct. 2562, 2566 (2005) (a new claim
first asserted after the limitations period has run out does not relate back "when it asserts a new
ground for relief supported by facts that differ in both time and type from those the original
pleading set forth.").

Assuming no relation back, respondent has not addressed the issue of whether
petitioner was entitled to interval tolling, see Welch v. Carey, 350 F.3d 1079 (9th Cir. 2003).
Respondent also does not address whether petitioner's habeas petition filed in the California
Court of Appeal was properly filed based on the denial of these claims for petitioner's failure to
\\\\\

1  exhaust administrative remedies and to include supporting documents, see Artuz v. Bennett, 531

2  U.S. 4, 121 S. Ct. 361 (2000).

3         For the reasons discussed above, the court finds that respondent has not met his

4  burden of demonstrating that petitioner's claims are barred by the statute of limitations. Day v.

5  McDonough, 126 S. Ct. 1675, 1681-82 (2006) (statute of limitations is not jurisdictional and is

6  akin to an affirmative defense). In Day v. McDonough, the Supreme Court held that district

7  courts may sua sponte consider the timeliness of a state prisoner's habeas petition. Based on the

8  lack of briefing regarding the issues discussed above, the court's consideration of the timeliness

9  of the supplemental petition would, in essence, be sua sponte. However, the Supreme Court in

10  Day v. McDonough also stated that before acting on its own initiative, the court must "accord the

11  parties fair notice and an opportunity to present their positions. Id. at 1684. Because the parties

12  have not had an opportunity to address the issues discussed above, the court declines to sua

13  sponte consider the timeliness issue. Accordingly, the motion to dismiss on grounds that the

14  claims raised in the supplemental petition are untimely should be denied.

15         Respondent next argues that the claims raised in the supplemental petition should

16  be dismissed because they are not exhausted. The exhaustion of state court remedies is a

17  prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If

18  exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. §

19  2254(b)(3). A waiver of exhaustion, thus, may not be implied or inferred. A petitioner satisfies

20  the exhaustion requirement by providing the highest state court with a full and fair opportunity to

21  consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270,

22  276,  92 S. Ct. 509, 512 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied,

23  478 U.S. 1021 (1986).

24         Respondent argues that petitioner's claims are not exhausted because the

25  California Court of Appeal denied petitioner's habeas petition raising these claims based on

26  petitioner's failure to exhaust administrative remedies. Supplemental Petition, Exhibit J. The

17

1   California Supreme Court denied the petition raising these claims without comment or citation.

2   Id., Exhibit K.  Applying the look through doctrine, see Ylst v. Nunnemaker, 501 U.S. 797, 803-

3   04, 111 S. Ct. 2590 (1991), respondent argues that petitioner's claims are barred because the

4   California Supreme Court rejected them for the procedural reasons given by the California Court

5   of Appeal rather than on the merits.

6         Respondent is confusing the doctrines of exhaustion and procedural default.  As

7   stated above, exhaustion requires petitioners to provide the highest state court with a full and fair

8   opportunity to consider all claims before presenting them to the federal court.  Petitioner did just

9   that when he filed his habeas petition raising these claims in the California Supreme Court.  That

10  petitioner's claims were denied on procedural grounds does not mean that the claims are not

11  exhausted.  Accordingly, the motion to dismiss on this ground should be denied.

12        Respondent next argues that the claims raised in the supplemental petition are

13  procedurally defaulted because they were denied for petitioner's failure to exhaust administrative

14  remedies and to include supporting evidence.  Applying the look through doctrine discussed

15  above, the court finds that the California Supreme Court denied these claims on these grounds.

16        Whether a claim is procedurally barred involves a burden-shifting analysis: "Once

17  the state has adequately pled the existence of an independent and adequate state procedural

18  ground as an affirmative defense, the burden to place that defense in issue shifts to petitioner.

19  The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate

20  the inadequacy of the state procedure, including citation to authority demonstrating inconsistent

21  application of the rule.  Once having done so, however, the ultimate burden is the state's."

22  Powell v. Lambert, 357 F.3d 871, 875 (9th Cir. 2004).

23        The court is concerned that petitioner was unaware of the burden-shifting analysis

24  set forth above, as respondent's briefing contains no mention of it.  The court is reluctant to find

25  claims procedurally defaulted in a situation where the pro se petitioner was not given notice of

26  his pleading burden.  Rather than ordering additional briefing, the court recommends that motion

18

1  to dismiss on this ground be denied because petitioner did not have adequate notice.  See

2  Lambrix v. Singletary, 520 U.S. 518, 524-25, 117 S. Ct. 1517 (1977) (court bypassed question of

3  procedural default to reach the merits of petitioner's claims).  See also Busby v. Dretke, 359 F.3d

4  708, 720 (5th Cir. 2004) (same).

5         Having determined that review of the merits of petitioner's claims is warranted,

6  the court considers the standard of AEDPA review.  As stated above, the California Supreme

7  Court and California Court of Appeal did not address the merits of the claims raised in the

8  supplemental petition.  However, the Solano County Superior Court issued a reasoned decision

9  denying the petition which raised these claims.  Supplemental Petition, Exhibit I.  Accordingly,

10  the court will consider whether the denial of these claims by the Solano County Superior Court

11  was an unreasonable application of clearly established Supreme Court authority.

12         As discussed above, the claim in the supplemental petition alleging violation of

13  Cal. Penal Code § 190 appears virtually identical to the claim raised in the third amended

14  petition.  Accordingly, the court need not further address the merits of this claim.

15         In his second claim for relief, petitioner argues that he was entitled to be released

16  on parole no later than his "maximum eligible parole date" of April 18, 2001, based on a

17  heightened expectation of parole release created by state officials over many years.  Petitioner

18  claims that soon after entering prison, he was told by members of a classification committee that

19  he could expect to serve roughly between ten and fifteen years on his sentence of fifteen years to

20  life.  Petitioner claims that BPT officials later told him the same thing.

21         Petitioner's claim that prison and BPT officials misled him to believe that he

22  would be released no later than his "maximum eligible parole date" does not state a federal

23  claim.  No clearly established Supreme Court authority provides for such a claim.  The court

24  observes that petitioner is not claiming, for example, that his failure to parole earlier violated his

25  plea agreement.  The denial of this claim by the Solano County Superior Court was not an

26  \\\\\

19

1   unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

2   should be denied.

3                      Accordingly, IT IS HEREBY RECOMMENDED that:

4                      1.  Respondent's January 31, 2006, motion to dismiss the supplemental petition be

5   denied;

6                      2.  The claims raised in the supplemental petition be denied;

7                      3.  The claims raised in the third amended petition be denied.

8                      These findings and recommendations are submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10  days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13  shall be served and filed within ten days after service of the objections.  The parties are advised

14  that failure to file objections within the specified time may waive the right to appeal the District

15  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16  DATED:   7/5/06

                                                  /s/ Gregory G. Hollows
17  _____

18                                                GREGORY G. HOLLOWS
                                                  UNITED STATES MAGISTRATE JUDGE
19

    ggh:kj
20  will919.157

21

22

23

24

25

26